## B. Chase, adm'r, &c. vs. A. Barrett and others.

Where A. B. being the owner of several farms, in 1827, entered into articles of agreement with three of his sons and his son-in-law, wherein it was agreed, that the three sons and son-in-law should work and carry on the farms owned by A. B. for the term of five years, in such manner as might be thought by A. B. most discrèet and prudent, and should put on the same all such implements of husbandry as they owned, and A. B. agreed to put on to the said farms, for the use thereof, all such teams and implements of husbandry as he owned, and it was further agreed that other teams and implements of husbandry which might be necessary should be purchased from the products of the farms, and that each of the parties should have his proper living and expenses out of such products; and A. B. also agreed that at the expiration of the said term of five years, his said three sons and his son-in-law should have the one half of his personal property and one half of the products of the farms; and A. B. further agreed that in case the three sons and son-in-law faithfully performed the said agreement on their part, that he would convey to them by deed in fee simple one half of all such farms; and at the time of making the agreement A. B. owned considerable personal property; and his son-in-law was then in ill health, and remained in such ill health, and unable to work, until his death, which took place a few weeks thereafter; *It was held,* that the articles of agreement did not constitute the parties thereto copartners, so as to entitle the representative of the son-in-law to a share of the property; although by the act of God it became impossible for the decedent to perform his part of the agreement.

A person who contracts for a share of the profits of a particular trade or business, as profits, is a partner as to third persons, and is liable for the debts of the partnership.

Whether a partnership exists, as to creditors, between a merchant and a mere servant or agent of his, who contracts with the merchant for a share of the actual profits as a reward for his services, and who is not held out to the world as a partner? Quære.

To constitute a partnership, as between the parties thereto, there must be a joint ownership of the partnership funds and an agreement, either express or implied, to participate in the profits or loss of the business.

Where an agreement cannot be carried into effect, according to the intention of the parties, in consequence of the act of God, or something over which the parties could have no control, the utmost that a court of equity can do is to decree such an equitable arrangement as the parties would probably have provided in the agreement, if they had foreseen the probability of such an event.

July 16.    This was an appeal from an interlocutory decree of the vice chancellor of the eighth circuit. The cause was heard on bill and answer as to all the defendants, except Saphrona

Chase, the widow of C. Chase. The facts of the case, as admitted by the answer, were as follows : In the latter part of 1827, C. Chase, the decedent, married the daughter of A. Barrett, one of the defendants, and the sister of the other defendants. In the month of April subsequent to the marriage, A. Barrett being then the owner of several farms, and extensively engaged in the farming business in which he was assisted by three of his sons, S. S. Barrett, A. Barrett, jun. and Lucius Barrett, entered into a written agreement with his son-in-law and those three sons, as follows :

"Memorandum of agreement made and entered into this fifteenth day of April, one thousand eight hundred and twenty-eight, between Amos Barrett of the first part, and Chauncey Chase, Sidney S. Barrett, Amos Barrett, jr. and Lucius Barrett, of the second part, all of Ridgeway, in the county of Orleans, witnesseth, that the said Amos Barrett, for and in consideration that the said parties of the second part will, and do faithfully work and carry on the farms of the said Amos, in the town of Ridgeway and Yates, which he, the said Amos, now owns or may purchase and put on said farms, such implements of husbandry as they may own, for the term of five years from the date hereof, in such manner as may be thought by the said Amos most discreet and prudent, doth agree to put on for the use of said farm or farms all such teams and tools and implements of husbandry as he now owns, and also let George Barrett, Stephen Barrett and Luther Barrett work and labor during the time aforesaid with the said parties of the second part, for the mutual benefit of the parties to this agreement ; and it is further agreed and expressly understood that the teams and other implements of husbandry are to be purchased, and from the products of the farms, during the time aforesaid, and each of the parties to have his or their proper living and expenses of the products as aforesaid. And the said Amos Barrett doth agree to and with the said parties of the second part, that at the expiration of the said term the said parties of the second part shall have the one half of all the chattel property of the said Amos Barrett now owned by him, and one half of all the chattels which may grow out or arise from the products of said farms, produced by the labor, skill and

diligence of the parties to these presents ; to be divided between them, share and share alike, after deducting all dues which may be owing by the said Amos for the purpose aforesaid ; household furniture of the said parties excepted. And the said parties of the second part doth agree well and truly to labor for and with the said Amos Barrett, for the consideration aforesaid, and to use all their skill, art and diligence to promote the interest of the said Amos Barrett in and about carrying on the farm or farms as aforesaid, during the term of five years from the date hereof, and fully to be complete and ended, and not to labor for themselves in and about their or any of their individual business, or for their individual benefit, otherwise than shall be mutually agreed by the parties to these presents. And the said Amos Barrett, for himself, his heirs and assigns, doth further agree that in case the said parties of the second part do and shall well and truly perform and keep their said agreement above mentioned, to convey to them by deed good and lawful and sufficient, to invest in them the fee simple of the one half of all such lands as may or shall now be owned, or may be owned by the said Amos Barrett at the time of the expiration of this agreement, for the mutual benefit of the said parties of the second part. It is understood that the parties of the second part are to put in all of their property for the benefit of the party of the first part ; and the boys are to have the benefit of the winter's schooling. In witness whereof the parties to this agreement have hereunto interchangeably set their hands and seals the day and year first above written.

In presence of          Amos Barrett,    [L. s.]
    Luther Barrett.         Chauncey Chase, [L. s.]
                     Sidney S. Barrett, [L. s.]
                     Amos Barrett, jr. [L. s.]
                     Lucius Barrett," [L. s.]

At the time of making the agreement, A. Barrett, in addition to the several farms owned by him, upon some of which a portion of the purchase money was yet due, owned considerable personal property ; consisting of horses, cattle, farming utensils, &c. He had also, growing on his farms, a large crop of wheat, which had been sown the preceding fall. At the time of

making the agreement, C. Chase was in bad health, and continued unwell and unable to labor until his death, which happened on the 8th of August thereafter.  He died without issue, leaving his father, the complainant, his heir at law, and entitled also to a moiety of his personal estate, under the statute of distributions.  After the death of C. Chase a conversation was had, between the complainant and A. Barrett, respecting the property and rights of the decedent.  And it was agreed between them that A. Barrett should pay the debts, and that if there was any of his property remaining, after payment of such debts, it should be given to his widow.  In pursuance of this agreement, A. Barrett paid off the debts of the decedent. The complainant having subsequently taken out letters of administration on the estate of his son, he filed his bill in this cause; claiming an account and distribution of all the personal estate of A. Barrett, and of the personal estate received of C. Chase and the other parties, under the agreement of April, 1828 ; and praying that it might be distributed as partnership property.  The vice chancellor decided that the agreement of April, 1828, constituted the parties copartners in the personal estate, and in the issues and products of the real estate.  And he directed the defendant, to account to the complainant for one eighth part thereof, that being the value therof at the death of C. Chase ; deducting therefrom the amount paid out by A. Barrett for funeral charges, &c. and other debts of C. Chase. From this decree the defendants, A. Barrett, S. S. Barrett, A. Barrett, jun. and L. Barrett appealed to the chancellor.

The following is the opinion of the Vice Chancellor upon the decision of the case before him :

GARDNER, V. C.   Amos Barrett, being possessed of a large real and personal estate, in the county of Orleans, on the 15th of April, 1828, and as the bill alleges, with a view to the advancement of his sons, entered into an agreement with Chauncey Chase, his son-in-law, Sidney, Amos, jun. and Lucius Barrett, his sons, of which the paper here annexed is a copy. On the 1st of August, 1828, Chauncey Chase died ; and this bill is filed by the complainant, as his administrator, against the defendants for an account of the property and proceeds,

for the appointment of a receiver, and that the personal property may be sold by the order and decree of this court.

A single question is presented; whether the agreement of the 15th of April, above referred to, created a partnership between the parties to that agreement. It is unnecessary to discuss the legal effect of this contract upon the rights of third persons, as there is a just and marked distinction between a partnership as respects the public and as respect the parties. (*Kent's Com.* 9.) For the former purpose, appearing as a partner, or participating in the profits of a trade, is sufficient. For the latter, the parties must have joint shares in the stock and must be jointly interested in the general trade or particular adventure. (*Gow*, 14.) In relation to the real estate, covenanted to be conveyed by Amos Barrett at the expiration of five years, it is not pretended that any partnership existed. (15 *John. Rep.* 159. 5 *Vesey, jun.* 189. 9 *Id.* 505.) And the inquiry will be, whether the agreement, so far as it respects the personal property and the profits to be derived from working the lands, constituted a partnership to this extent, or whether it was merely a mode by which Amos Barrett was to compensate the other parties to the agreement for their labor.

In the first place, had the parties to this agreement a mutual interest in the capital invested? The capital in this case consisted of all the personal property of the intestate and his associates, and their labor—upon the part of Amos Barrett, his teams and farming utensils, and the labor of his three boys. Amos Barrett expressly covenants that the three boys shall labor for the mutual benefit of the parties to the agreement; and the parties of the second part covenant well and truly to labor for and with the said Amos Barrett in carrying on the farms mentioned in the contract. Again, it was stipulated expressly that the teams, farming utensils, &c. of both parties should be purchased from the products of the farms. And each of the parties was to have his or their proper living and expenses out of those products; and that one half of the property which might grow out of or arise from the products of said farms, produced by the labor, skill and diligence of all the parties, at the expiration of the five years, should be divided between them share and share alike.

It appears obvious to me, that in the labor thus to be performed for their mutual benefit in the property put in, and which was to be paid for by the products of the joint labor, the parties to the agreement must be considered as having a joint interest, and of course, a mutual interest in the capital invested. In this respect, it is believed that the present case is to be distinguished from those cited by the defendants. In the case of *Hesketh* v. *Blanchard*, (4 *East*, 143,) the property shipped was purchased by the plaintiff for Robertson, and at his request, and was insured for the latter ; the plaintiff was to have half the profits of his adventure for his trouble. The court said, quo ad third persons, it was a partnership ; but between the parties, an agreement for a compensation for the plaintiff's trouble and credit. Here it will be obvious that the parties had not a mutual interest in the provisions shipped. On the contrary, they were the sole property of Robertson, and the plaintiff had no interest beyond a share in the profits. In *Mozer* v. *Thorpe*, (5 *Taunton*, 74,) the distinction between a joint interest in the goods, and an interest in the adventure, is taken and insisted upon by the court. So, in the case of *Muzzy* v. *Whitney and others*, (10 *John. Rep.* 228,) the defendants contracted with the turnpike company to make the road specified in the written agreement, and afterwards agreed to let the plaintiff have a share of the profits, if any, in making the road, in proportion to his help. This was determined to be a mode of paying the plaintiff for his help and labor. It is apparent there was no unity of interest in this case between the parties to the contract. The responsibility of completing the road, rested solely upon the defendants. The plaintiff was a sub-contractor merely. He worked for the defendants, who were entitled to receive the whole amount for constructing the road from the company, and their profits were only referred to by the contract as the measure of the plaintiff's compensation. Had the plaintiff and the defendant contracted directly with the turnpike company, there would then have been an union of interest, within the rule ; they would then have had a joint interest in the labor and advances necessary to complete the contract, and this would have consti-

tuted them partners as between themselves. (*Doug.* 653.) So in the case of *Dry* v. *Boswell*, (1 *Campb. N. P.* 329,) A. employed B. to work a lighter, and the gross earnings to be divided, (not the nett profits,) held not a partnership; and the case in 4 *Espinasse*, 182, is of the same character. The same principle pervades these, and, I believe, all the cases that can be found upon this subject, that there must be a mutual interest in the capital, whether it consists in money, labor or credit, as well as share in the profits, to constitute a partnership as between the parties. (*Gow*, 14. 15 *John. Rep.* 422. *Kent's Com.* 13. *Watson*, 21. 2 *H. Black. Rep.* 244. And all the cases cited for the defendants will be found, upon a careful examination, to be destitute of this distinctive feature of a partnership. I have attempted to shew, that by a fair construction of this agreement, a joint interest was created in the capital put in; and there is an express stipulation to share in the proceeds of this capital after a certain interest. The agreement is informal; and from the circumstance of its being drawn inter partes, some doubt may obtain as to the precise import of some of its provisions. But I am of the opinion that it constituted the parties to it partners; and that Amos Barrett and the other defendants, with the exception of Sophronia Chase, must account to the plaintiff in this character.

*B. F. Butler*, for the defendants. The agreement, connected with the facts appearing in the bill and answer, did not constitute a partnership between the parties to the agreement. For the purpose of constituting a partnership as to third persons, appearing as partners or participating in the profits of a trade is sufficient. As between the parties themselves, they must have joint shares in the stock, and must be jointly interested in the general trade or particular adventure. (*Gow on Part.* 12.)

The vice chancellor seems to suppose that the agreement in this case was not to provide a compensation for services to be performed, but was distinguishable from those cases by reason of the parties to the agreement having brought some stock in the joint concern. This is an erroneous construction

of the agreement, and untrue as a matter of fact. The agreement provides, in the commencement, that if the intestate and the sons of Amos Barrett will and do faithfully work and carry on the farms of the said Amos for 5 years, and put on said farms such implements of husbandry as they may now own, then Amos Barrett agreed that he would also put on said farms all the tools, &c. he owned, and also let his three sons (minors probably) labor during the time aforesaid for the mutual bene-fit of all parties. At the close of the agreement, it is also stated that the parties of the second part are to put in all their property for the benefit of the first part, (Amos Barrett.) This clause is erroneously stated in the bill.

It is clear, from these provisions taken together and in connection with other parts of the contract, that it was an agreement to purchase, on the part of his sons and his son-in-law, the intestate, and an agreement on the part of the father to sell for a stipulated consideration one half of all his real and personal estate. This construction is supported by the covenant, on the part of the sons, to labor for and with the said Amos Barrett for the consideration aforesaid; to use all their skill, &c. to promote the interest of the said Amos in and about, &c. They were to have one half of the chattel property accruing for profits of the farms, deducting all debts which the said Amos might owe in consequence of carrying on the business. If, however, there was a loss in carrying on the business, if no chattel property accrued from the profits of the farms, they were not to sustain the loss. They were to have, at all events, if they complied with their contract, one half of all the real and personal estate of Amos Barrett, their father; that is, one half of all he then had; if more was acquired, they were also to have half of it; but so much was their right by contract.

It is difficult to perceive how the real and personal estate can be separated. The contract was entire. The intestate acquired no more right to the personal estate of A. Barrett than to the real. The right to either depended upon the performance of the agreement. Pherhaps the first clause, in which it is said that A. Barrett agrees to put on for the use of said farms all such tools and implements, &c. and also let his

1833.

Chase
v.
Barrett.

three sons labor for the mutual benefit of all the parties to the agreement, may be supposed to evince an intention to put that part of the property of the father into common stock. But it will be perceived that it is only the use of the tools and implements he parts with for the purpose of carrying on the farms. The latter clause, for the mutual benefit of the parties to the agreement, applies to the labor of his sons. The next clause is relied upon, that the tools and implements of husbandry were to be purchased from the products of the farms. This evidently means no more than that any future additions to the farming utensils which the business might require should be purchased from the products of the farms. Amos Barrett, in other words, was not to furnish from his separate property funds to keep the tools in order; and this is the whole extent of the clause.

Any other construction of this agreement is absurd; for it could not be supposed that Amos Barrett, having as is stated a large personal estate, intended to put that into common stock with the small amount owned and possessed by the intestate, and without any equivalent; for if the title to the personal estate became complete by the agreement, it being a copartnership, then, so far as that was concerned, it was wholly unnecessary for the intestate to labor the five years. The main inducement to the agreement, as regards the personal estate, was gone.

The vice chancellor erred in supposing the parties put in any thing as stock. In the commencement of the agreement, they agree to put on, for the use of the farm, tools, implements, &c. At the close of the agreement, they agree that Amos Barrett shall have all their property. No property was put in as stock. There is no joint capital; it is either a separate capital to be taken out by each, or it all goes to Amos Barrett. The most that any part of the agreement expressed was, that the use of the tools, &c. should be put in; and if it were left there, each party had a right to resume his own. He did not part with the property. If the property was parted with by the agreement, it was expressly transferred to Amos Barrett. So the agreement was understood by the surviving parties. They all deny that they ever understood or

supposed the agreement made them parties, or that they received jointly in any manner any property from said intestate. If the agreement is dubious in its terms, acts of the parties to it may be resorted to for the purpose of aiding us in its construction.

But whatever may be the effect of this agreement as to third persons, it could not create a partnership between the parties, if the facts negative any intention or agreement that it should have such operation. (*Chitty on Contracts*, 67, *and cases there cited.* 2 *Barn. & Cress.* 401. 9 *Com. Law Rep.* 122. 10 *John. Rep.* 226. 20 *Id.* 611.) There is no technical rule on this subject as between the parties to the agreement. (2 *H. Bl.* 244.) What then is the plain intent and object of this agreement ? It was a mere family compact or arrangement. The father proposed, eventually, to provide for his children, giving a trial of five years in the first place. If all the personal estate of the father, Amos Barrett, was by this arrangement put into common stock, then the real estate should be also. The same reasons will apply, so far as the good sense and true meaning of the contract is concerned ; yet no one would contend for such an absurdity.

Again ; the plaintiff waived all claim upon the property in question, and cannot now call upon any one for it.

*M. T. Reynolds*, for the complainant. It is conceded that the covenant of Amos Barrett to deed to the other parties one half of his lands, at the end of five years, did not create a partnership as to the real estate. (3 *Bro. C. C.* 199. 5 *Ves. jun.* 189. 9 *Id.* 505. 15 *John. Rep.* 159.) But as to the personal property, I contend a partnership may be created by the agreement. The parties of the second part, by their agreement, surrendered into the hands of Amos Barrett all their property. Barrett, on his part, furnishes the farms and all the implements of husbandry he owns, to be used on the farms. The parties of the second part also put on for the use of the farms all their implements of husbandry. Here is a joint and present interest, although the division is to be made in *futuro*. Both parties put on to the farms tools and implements, to be used in their cultivation for the mutual benefit ; all of which

are to be paid for out of the proceeds of the farms. If the farms, therefore, yield nothing more than the support of the parties, the parties of the second part sustain the loss of the property vested. The case of *Muzzy* v. *Whitney and others*, (10 *John. Rep.* 226,) is distinguishable from this. In that case there was not that mutuality which is necessary to constitute a copartnership. In this case all these prerequisites are supplied. The parties of the second part furnish all their property ; they covenant to give their whole time to the business, and the whole property is to be divided. The cases of *Hesketh* v. *Blanchard and others*, (4 *East,* 144,) *Dry* v. *Boswell*, (1 *Campb. N. P.* 329,) and *Wilkison* v. *Frasier*, (4 *Esp. N. P.* 182,) are unlike the present. It is a well settled rule of law, that if a person who is employed by another to sell goods, is to have for himself whatever money he can procure for them beyond a stated sum, he is not a partner, but a mere factor or agent ; but if he has made an investment in the concern, and his profit or loss depends on a contingency, he is a partner. (*Benjamen* v. *Porteus*, 2 *Hen. Bl.* 590.) The true definition of partnership was given on the argument of the case of *Waugh* v. *Coven*, (*Id.* 244,) as cited from *Puffendorf, lib.* 5, *ch.* 8 : " A partnership is where two or more bring together money, property or labor, to the end that thereafter the gains should be divided amongst them pro rata." The same definition is adopted by *Kent* in his *Commentaries*, (*vol.* 3, *p.* 6.) If, then, this agreement did create the relation of partners, the complainant was not bound to wait until the expiration of the five years before he filed his bill ; for the death of one of the partners dissolved the copartnership. (3 *Kent's Comm.* 28, 30.) Should the court decide that the article of agreement did not create a partnership, this will yet be a case of equitable jurisdiction, and one in which the court must grant relief. The bill at least can be retained as against Amos Barrett, and he be made to account. If the complainant is not entitled to relief, and his bill is dismissed, it will be without costs. (*Goodrich* v. *Pendleton*, (3 *John. Ch. Rep.* 520.)

THE CHANCELLOR. As this cause was heard on bill and answer, all the allegations in the answer of the defendants are admitted to be true, for the purposes of this suit. The facts there stated show that the complainant has no legal or equitable claim against any of the defendants, unless the agreement of April, 1828, constituted the parties thereto copartners. If they were copartners, the complainant probably has a legal right to an account, and to a portion of the partnership fund; notwithstanding it appears by the answer that the intestate actually received in his support and maintenance, and other equitable claims against him, the whole amount which he contributed towards the partnership fund. Although the complainant agreed with the defendant A. Barrett to relinquish his claim upon the estate of his son if Barrett would pay the debts, I infer from the pleadings that the complainant had not then taken out letters of administration on the estate. And he was not legally bound in his character of administrator for the performance of an agreement made previous to that time, although he might be considered as bound in honor to perform the same. The vice chancellor was right, however, in allowing to A. Barrett all sums actually paid by him under that agreement, even if the complainant was entitled to a share of the whole property as the representative of a deceased partner. I shall therefore proceed to inquire whether the agreement of April, 1828, constituted the parties thereto copartners as between themselves, so as to entitle the representative of the son-in-law to one eighth of the property, although, by the act of God, it has become impossible for the intestate to perform his part of the agreement, and to carry into effect the original intention of the parties.

If the question to be determined was, whether this was such an agreement to share in the profits of a joint concern as to render all the parties to the same liable for debts contracted in the regular prosecution of their business, it might perhaps admit of a ready solution. A person who contracts for a share of the profits of a particular trade or business, as profits, has, upon principles of public policy as applied to commercial contracts, been holden to be a partner as to third persons. Upon the principle, I presume, that he who contracts for and relies

upon a part of the profits of the business as a compensation for his services, or for the use of his capital, is in natural justice bound to pay the creditors who have, upon the ordinary terms of credit, furnished the merchandize or other means out of which those profits were to arise, or by which they might be increased for his benefit. Whether this principle has not been carried too far, in extending it to the case of a mere servant, or agent of the trader, who contracts for a share of the actual profits of the business as a reward for his services, and who is not holden out to the world as a partner, is a question not necessary to be discussed in this case. It is certain, however, that such a partnership in relation to the rights of third parties, founded upon commercial policy, cannot be construed a contract of partnership between the trader and his servant, so as to give any rights to either contrary to their own intentions. To constitute a partnership as between the parties themselves, there must be a joint ownership of the partnership funds, according to the intention of the parties; and an agreement, either express or implied, to participate in the profits and losses of the business, either rateably or in some other proportion to be fixed upon by the copartners. When, by the agreement of the parties, they are to participate in the profit and loss, and the legal title to the property is in the parties jointly, a dissolution of the company, by the death of one of the parties, leaves the title to the property in the survivors and the personal representative of the decedent; and there must be an account and distribution of the partnership effects, unless the parties had previously provided for the continuance of the partnership by the survivors, or otherwise.

What then was the nature of the agreement into which the parties entered in this case, according to the manifest intent as apparent from the agreement when taken in connection with the situation and relationship of the several parties thereto? The father, a man of considerable wealth, consisting principally of real estate, agrees with his three sons and his son-in-law, who appear to have had but little property of their own, that they shall work such farms as he then owns, or as he may afterwards purchase, for the term of five years, and shall put in all their property for his benefit, except their

1833.

Chase
v.
Barrett.

household furniture; that he would put on to the farms all the teams, tools and implements of husbandry he then owned; that his younger sons should also work on the farms; and that at the expiration of the five years, the three sons and the son-in-law who were parties to the agreement, should have the one half of the chattels which the father owned at the time of making the agreement, and one half of the property produced by carrying on the farms, deducting the expenses, and also one half of the real estate he then owned, or which he should own at the expiration of the agreement. In the mean time, the several parties were to have their living and expenses out of the products of the farms; and the teams and other implements of husbandry, which might be wanting during the five years, were to be paid for out of the produce of the farms. I think it is evident, from the provisions of this agreement, that it was the intention of the father to keep the legal title to the whole real and personal property in his own hands during the five years; and that the performance of the services by the sons and son-in-law was a condition precedent to the conveyance to them of a share of the property. It was in fact a family arrangement, with a view to the future distribution of the one half of all his property among this portion of his family, reserving the other half for himself and his other children. The real estate was as much a portion of partnership property, under this agreement, as the personalty; and if the complainant is entitled to have an account and distribution of the latter, on the principles of a copartnership, he is also entitled to a conveyance of a portion of the real estate. Although a contingency has happened which neither party anticipated, that cannot authorize the parties to make a disposition of the property which none of them ever contemplated, and which it is impossible to believe would have been agreed to by them, if this contingency had been foreseen as one which would probably happen. The most that a court of equity can do in a case where an agreement cannot be carried into effect, according to the intention of the parties thereto, in consequence of the act of God, or something over

which the parties could have no control, is to adopt such an equitable arrangement as the parties probably would have inserted in the agreement, on that subject, if they had foreseen the probability of such an event and provided for the same. (*Newton* v. *Rowse,* 1 *Vern. Rep.* 460. *Quick* v. *Stuyvesant,* 2 *Paige's Rep.* 84.) If these parties, at the time of making this agreement, had anticipated that the son-in-law might be taken sick immediately afterwards, so as to render it impossible for him to labor as contemplated by the agreement, and that he might die within a few months thereafter, intestate and without issue, leaving the whole of his real estate and one half of the personalty to go to his own relatives, is it probable that the parties would have made any stipulation except such an one as was entered into between the complainants and A. Barrett, immediately after the death of the intestate ? As that agreement was fulfilled in good faith on the part of A. Barrett, so far at least as the complainant had any interest in the performance thereof, there was no foundation for this suit on that ground.

As I am satisfied the vice chancellor erred in supposing the defendants were liable to account upon the footing of a partnership, his decree must be revered, with costs. The complainant's bill must also be dismissed. But as the complainant was prosecuting his suit in his character of administrator, and has no funds of the estate in his hands, I shall not charge him with the costs of the proceedings before the vice chancellor.