The opinion of the court was- delivered by
Chief Justice Green.
*643 Oh. Justice. It is objected in the first place, that the terms of the contract, as set forth in the bill, or as established by the proofs, are not in themselves sufficiently certain to entitle the complainant to a specific performance.
It is an admitted principle of equity, that all the terms of a contract must be clear, and definitely ascertained, so as to enable the court to arrive at a satisfactory result as to the entire contract, or a specific'performance will not be decreed: Story’s Eq. Pl. 767.
The only exception which has been taken to the terms of the contract as stated in the complainant’s bill, is that it does not appear by whom, or under whose direction, the fruit is to be picked and marketed. In every other respect, it is not denied that the terms of the contract as set forth are sufficiently clear and specific.
However serious an objection this might have been to a specific execution of the contract as set out in the bill of complaint, the whole difficulty is removed by the express admission of the defendant’s answer. The answer states, that by the agreement the peaches wore to be picked and marketed by the defendant; and the decree of the Chancellor is made in strict accordance with this admission. It surely does not lie in the mouth of the appellant to insist that the contract lacks precision in a particular which is distinctly stated and admitted by him in his answer under oath.
2d. It is objected that the contract as sought to be enforced is not established with sufficient certainty by the evidence.
Now the fact of the making of the contract; that by the terms of the agreement, 2700 trees were to be furnished by Jaques, and delivered at Camden at his expense; that they were to be cultivated by Robbins, on his farm ; that they were to be picked and marketed by him at the joint expense of both parties, and that the net proceeds were to be equally divided between them, are all distinctly admitted by the defendant’s answer. Upon these points no further proof was requisite. They are established by evidence which is conclusive against the appellant: Gresley’s Eq. Ev. 10, 165; 1 Smith’s Chan. Pr. 273; 4 Mad. R. 15, E. In. Co. v. Keighley.
The only points to be settled by the evidence were,
*644 1. At whose expense were the trees to be carted from Camden and cultivated ?
2. 'Was the balance due on a promissory note for one hundred and seventy dollars and thirty-five cents, bearing date the 5th of April, 1841, given by Richard and Samuel R. Jaques to the appellant, to be deducted from Jaquesis share of the net profits?
The terms of the contract as set out by the copplai-nant’s bill are substantially proved by Samuel R. Jaques, who was present when the contract was made; by Ballanger, who heard them from the lips of Jaques in the presence and hearing of Robbins; and by Knowles, who details them as they were stated by Robbins after the death of Jaques. There is evidence standing unimpeached amply sufficient to overcome the answer of -the defendant (even if unexceptionable) and the corroborative testimony of Pierson, the only witness by whom either of its material allegations seem to be supported. In addition to this, we have the conclusive fact that the note, the payment of which is alleged by the answer to have been one of the -terms of -the contract between Robbins and Jaques, bears date at least one year after the contract was executed.
3. It is objected that the contract is void, as being within the operation of the statute against frauds and peijuries.
To whatever -weight this objection might have been entitled at law, it is clear that in a court of equity it has been exempted from the operation of the statute by part performance. In pursuance and part performance of -the agreement, the trees have been purchased and delivered by Jaques, and received, planted and cultivated by Robbins. The grounds-of objection to the enforcement of a parol agreement are removed. Neither party can be restored to the position in which he stood before the making of the contract; -and equity requires that the agreement .should be specifically carried into execution.
4. It is objected that the contract between Jaques and Robbins constituted a partnership; -that the interest of a deceased partner in the partnership effects .cannot be sold, and that the purchaser cannot interfere with the rights of the surviving partner.
Admitting the contract to have constituted a strict commer *645 <clal partnership, it would seem to be a sufficient answer to .the objection to say, that although the legal title to the partnership effects upon the death of one partner vests in the survivor, the beneficial interest remains in his representative; that a valid assignment may be made of this beneficial interest, which will vest in the assignee a right in equity to an account and to a fulfilment of the trust by the surviving partner; that the decree in this case in no wise interferes with the legal rights of the survivor, but designs to enforce an account of the trust, which the defendant by his answer admits that he is hound to render.
But I am of opinion that this agreement as between the parities themselves constituted no partnership. A participation in •the profits does not necessarily and in all cases constitute the recipient a legal responsible partner. There is a large and familiar class of cases not within the general principle: Perrine v. Hankinson, 6 Hals. 181; Hesketh v. Blanchard, 4 East, 144; Wilkinson v. Frazier, 4 Esp. 182; Muzzy V. Whitney, 10 John. Rep. 228.
To constitute a partnership as between the parties themselves, ¡¿here must be a joint ownership of the partnership funds: Chase v. Barrett, 4 Paige, 160; 3 Kent’s Com. 24.
There was no such joint ownership as between these parties. Ho new right ivas acquired by survivorship upon the death of Jaques; no interest upon which the rights of survivorship could attach. The legal rights of Robbins were unaffected by the death of Jaques.
1 regard the agreement as a special contract under which Jaques is to be .remunerated for the cost of the trees by receiving a share of the profits. The contract in its operation and legal effect is simply a sale of the trees by Jaques to Robbins, in consideration of his receiving therefor one half of the proceeds of the sales of the fruit, deducting thereout the cost of picking and marketing the fruit.
It was said upon the argument that this was a contract respecting land or an interest in land. I cannot so regard it. On the contrary, I think it clear that immediately upon the trees being received and planted by Robbins upon his land, the legal title to them vested exclusively in him. Jaques retained no *646 legal interest in the trees, much less acquired any in the soil upon which they were planted. They became .a part of Robbins’s freehold, and in law he stood seized of them as fully and exclusively as of any other part of his freehold. True, he was a trustee in equity, and bound by virtue of his trust to cultivate the trees in a careful and husbandlike manner; bound to preserve them from waste or destruction, and bound to account to Jaques, his legal representative or assignee, for his share of the net profits. This is the true limit and extent of Jaqnes’s interest in the property. As cestui que trust of one half of the profits, he was entitled to have the trees properly cultivated, and the fruit properly marketed. By giving this construction to the contract, I think we shall best effectuate the intention of the parties and most effectually secure their-respective rights.
5. This view of the case affords an answer to the 5th objection urged to the decree, viz: That at the time of the bill filed the complainant was not entitled to the relief afforded by the decree.
At the time of filing the bill the existence of the trust had been denied by the appellant; the complainant sought to have the trust established. The trustee claimed an exclusive control over the trust property and a -right to deal with it to the prejudice of the interests of the cestui que trust. The bill sought to restrain the exercise of that power -so far as to prevent waste and to protect the interests of the cestui que trust. ■ These were unquestionably proper objects of relief in equity, and the court having once obtained jurisdiction-of a cause for one purpose will retain it for the more important purposes of the suit. And this, although they be distinct and independent grounds of relief from those originally contained in the bill, and although it becomes necessary to file a supplemental bill, to bring the case fully before the court. But here there was no new and substantial ground of relief; nothing requiring the aid-of,a supplemental bill. The court was fully in possession of the cause for the purpose of establishing the trust and the protection of the trust property. During the pendency of the suit, the trustee becomes possessed of trust funds, and the court compel him to account for the funds so received, pursuant to the prayer of the bill as amended by leave of the court. This we apprehend is in ac *647 un'dauce no less with round principle, than with the ancient usage and established practice of the court of chancery.
The last objection to the decree appealed from is that it denies to the appellant the right to an allowance upon taking the account before the master of the amount of Richard and Samuel R. Jaques’s note of the 5th of April, 1841.
It is very clear that this claim cannot be allowed upon the ground assumed in the answer, viz: that it formed a part of the original contract. The evidence is clearly otherwise.
But it was insisted upon the argument with much earnestness and force of reasoning,- that independent of any contract, the appellant was entitled upon accounting to the allowance of the amount of that note as an equitable set off against the claim of the complainant. That inasmuch as it appeared by the evidence that Samuel R. Jaques had paid his share of the joint note, the balance remaining due became in equity the sole debt of Richard Jaques, and should be allowed against the claim of the complainant, the estate of Richard Jaques being insolvent.
As a general principle equity follows the law in the allowance of a set off, and will not allow a set off of debts accruing in different rights. Even in cases of bankruptcy it is not allowed, except under special circumstances.
In the case of Hanson, Ex parte, (18 Vesey, 232,) which was cited on the argument in support of the claim of set off, the joint debt was a mere security for the separate debt of the party claiming the set off, and the Chancellor places the decision distinctly on that ground.
It is true that Lord Roslyn in Ex parte Quinten (3 Vesey) 248) allowed the set off in a case of bankruptcy, under circumstances which might be supposed to justify it in the present instance. But in Ex parte Troogood (11 Vesey, 416) Lord Eldon denied a similar application which was based upon the authority of Lord Roslyn’s decision; in Ex parte Quinten, denying the authority of that case. In Addis v. Knight (2 Mer. 124) Sir William Brant, master of the rolls, decided in accordance with the views of Lord Eldon, adding, “ It is quite clear that as at, law, a joint cannot be set off against a separate demand. J The same rule prevails in equity, and must continue *648 to prevail so long as the present system in regard to joint and separate estates subsists.
In Dale v. Cook (4 John. Ch. R. 15) Chancellor Kent, upon a review of the authorities, said, “ My conclusion is that joint and separate debts cannot be set off in equity, any more than at lawand the current of American authorities, seems fully to sustain this opinion : 2 Story's Eq. sec. 1437, note 1.
To warrant the interference of a court of equity, there must . be special circumstances creating an equity. Whether the mere insolvency of one of the parties creates such an equity, has given rise to some' difference of opinion. Insolvency alone was considered as affording such equity in Pond v. Smith, (4 Conn. Rep. 297) and the same principle was adopted by the court of errors in New York in Simpson v. Hart (14 J. R. 63.)
But Mr. Justice Story, in Green v. Darling (5 Mason, 145) and in Howe v. Shepherd (2 Sumner, 416) expresses his dissent from the principle adopted in Connecticut and New York, and in the latter case he declares that his researches have not enabled him to find in English jurisprudence a single decision wliich countenances any such equity for a set off. In Gordon v. Lewis, (2 Sumner, 633,) the same learned Judge reasserted the doctrine that insolvency alone constitutes no ground for the interference of the court.
The appellant in the present case labors under the further embarrassment in support of this claim—that he is seeking the aid of a court of equity to establish an equitable set off against a bona fide assignee of the individual debt, for a valuable consideration without notice; and that, too, without having made the claim a distinct ground of defence by his answer. If any doubt can be entertained as to the general principle involved in this point, these objections would- be conclusive against the appellant’s title to relief.
I am of opinion that- the decree of the Chancellor should be affirmed with costs, and that the record be remitted to the Court of. Chancery to be proceeded in agreeably to law.
Per tot. cur. Decree affirmed.