## LUCIUS B. NUTTING *v.* CHRISTOPHER COLT, Jun.

A person employed by another in a manufacturing establishment at a salary of $500 a year and one-fourth of the profits is not a partner.

A. employed B. in a manufacturing establishment at an annual salary of $500 and one-fourth of the profits, and B agreed that A might use his name as a partner in the business if A. should deem it advisable. The name of A. & Company was assumed. Afterwards, A being about to create a lien on property in the establishment, B gave a written certificate in which he stated that he, " one of the firm of Colt and Company," did not possess any interest in the property used by the Company, and did not claim any right in or to the same on account of his being a partner of the Company or on any other account. A. thereupon gave a mortgage on property in the establishment to secure acceptances of drafts to be drawn in the name of A. and Company. B. afterwards filed a bill against A. stating that he was a partner, and charging that A. had received large sums and applied them to his own use, and kept no proper accounts thereof, and refused to account to the complainant; and prayed an injunction, and the appointment of a Receiver. The injunction was allowed.

On answer, the appointment of a Receiver was denied; and the injunction was dissolved.

On the 29th June, 1847, the following article was entered by and between Christopher Colt, Jun., and Lucius B. Nutting.

" Memorandum of an agreement made the 29th June, 1847, between Christopher Colt, Jun., of Paterson, New Jersey, of the one part, and Lucius B. Nutting, of Dedham, Massachusetts, of the other part. Said Colt agrees to employ said Nutting as a Silk Dyer and Manufacturer, at Paterson aforesaid, for the term of one year, with an understanding that the same is to be continued to five years if mutually agreeable, at an annual salary of $500 and one-fourth of the profits of the dying and manufacturing establishment in which he is employed. Salary to be drawn as often as he may want, when due him.

Said Nutting agrees, on his part, to devote all his time and attention to the best interest of the dying and manufacturing department, and to commence for said Colt the 5th day of July,

1847; and to have his name used as a partner in said business should said Colt deem it advisable."

Nutting entered into his employment, under the said article, at the time therein specified.

The name of Colt and Company was assumed as the name under which the business was carried on.

On the 2d October, 1847, Colt being about to execute a writing creating a lien on the property in the silk manufactory, Mr. Hopper, a counselor at law in Paterson, who was to draw the necessary papers, knowing, as he says in his testimony, that the business was carried on in the name of Colt & Company, told Mr. Colt that if any other person was concerned with him in the business it was necessary that such other person should execute the papers with him. Mr. Colt, in answer, said that Mr. Nutting was in the mill with him, but had no interest in any of the property. Mr. Hopper then told Colt that, to avoid all question on that subject, he wished to have Mr. Nutting's signature to that effect. Colt requested Mr. Hopper to draw up such a paper as he wanted signed by Nutting and he would get *Nutting's* signature to it. Mr. Hopper accordingly drew a writing in these words: " This is to certify that I Lucius B. Nutting, one of the firm of Colt & Company, carrying on the business of silk manufacturing at Paterson, New Jersey, do 'not hold or possess any interest in the machinery, or any of the property used by the said company, or the silk, raw or manufactured; and do not claim to have any right or title in or to the same on account of my being a partner of the said company or on any other account whatever. Witness my hand this 2d day of October, 1847."

This writing was signed by Nutting and returned by Colt to Mr. Hopper; and Hopper then drew a mortgage on the property in the mill from Colt to Robert Morell, to secure him for acceptances of drafts to be drawn in the name of " Colt & Company," to be used in the purchase of silk and materials for carrying on the said silk manufacturing business. The mortgage was executed and delivered.

On the 20th December, 1847, Nutting exhibited his bill, stating, that on the 29th June, 1847, he agreed with Colt to become

a partner with him in the business of manufacturing, twisting and dying silk ; and that thereupon a certain agreement was made between them, [setting out the agreement above set forth]. That said business was entered into and carried on by them pursuant to the provisions of the said agreement, and still continues. That Colt has been in the habit of receiving large sums of money, and of drawing all checks, drafts and notes on the partnership account; but that he has not duly entered all such transactions in the partnership books of account ; but hath entered therein a part only of said transactions, and has kept the complainant in ignorance. That Colt has, from time to time, applied to his own use, from the receipts and profits of the business, large sums of money exceeding the proportions thereof to which he was entitled, and refuses to come to a settlement with the complainant. The bill states that Colt has greatly mismanaged the business, in raising large sums on the bills, notes and drafts of said firm at high rates of interest : and that Colt has applied the assets and effects of the firm to his own private use, to an amount beyond what he is entitled to. That the firm is indebted in large sums to different persons, and that said debts are now due. That upon a settlement of the accounts between them it will appear, that a large balance is due from the defendant to him in respect to said partnership dealings ; but that nevertheless Colt is proceeding to collect the partnership debts and apply the same to his own use ; which the defendant is enabled to do by means of his having possession of the books of account, and all the silk manufactured being carried to his house as soon as made.

The bill prays an injunction restraining Colt from collecting and receiving any of said partnership debts and moneys ; and the appointment of a receiver ; and a dissolution.

An injunction was allowed.

On the 5th February, 1849, Colt put in his answer; and a notice was given of a motion to dissolve the injunction.

A notice was also given, on the part of the complainant, of a motion to be made, on the same day, for the appointment of a

receiver; and also of a motion for an attachment for an alleged breach of the injunction.

Depositions were read on the argument of the several motions.

*B. W. Vandevoort* for the complainant.   He cited *Story's Eq. Jur. sec.* 846, 7, 852 ; 4 *Mad. Rep.* 252 ; 2 *Daniels Rep.* 250.

*Silas D. Canfield* for the defendant.

THE CHANCELLOR.   The question is, whether, under the article of agreement made between the parties, Nutting has any such rights as against Colt as entitle him, under the facts in other respects stated by the bill, to prevent Colt from receiving moneys due for goods sold from this establishment; and to have a receiver appointed to receive the same, and to take charge of the other property in the establishment.

There are cases in which, upon principles of policy, persons will be held to be partners in reference to third persons who as between themselves are not partners, and have not in reference to each other the rights of partners.

Whether, under the circumstances of this case, Nutting would as to third persons be held to be a partner and liable to debts, it is, perhaps, not neccessary to say.

As between him and Colt he is not a partner, but a person employed by Colt, at a salary of $500 a year and one-fourth of the profits.   4 *Paige* 148.

Nutting was to have his name used as a partner should Colt deem it advisable.   Colt assumed the business name of " Colt & Company."   If Nutting's name had been used, and he thus held out as a partner, he might, under such an agreement for a fourth of the profits, be held to be a partner as to creditors.   *Ibid.*

And if, under such an agreement, Colt had thought it advisable to use Nutting's name, and had, by the use of it in connection with his, contracted debts for which Nutting thus became liable

with him, there might be an equity even in favor of Nutting, as against Colt, that the property and assets thus brought into the establishment by the credit of Nutting's name in connection with Colt's, and at the expense of Nutting's liability in connection with Colt's, should, at Nutting's instance, and as against Colt, though as between them they were not in reality partners, be held liable, in relief of Nutting, for the payment of the debt so contracted; and that Colt, if his conduct evinced a disposition, after the debts so contracted and for which Nutting thus become justly liable with him, to use and dispose of the property and assets in such way as to withdraw them from any application thereof to the payment of such debts, should be restrained from collecting the dues of the establishment &c, and that a receiver should be appointed.

But there is nothing in his case calling for a receiver on any such ground of equity.

Nutting consented to such a use of his name as would make him liable as a partner to third persons, and yet agreed to terms by which he was not a partner as between him and Colt. This necessarily carried the idea that Colt was to have the control of the property and assets of the firm. Nutting relied on Colt's integrity and fidelity in the application of the assets to the payment of the debts that should be contracted.

There is no evidence that Colt, at the time of the application for an injunction and receiver, had betrayed Nutting's confidence. The bill says that a large amount of debts was *due ;* it does not say *payable ;* and the answer and depositions show, that all the drafts and acceptances which had become payable were met as they became payable ; and no sufficient reason is shown for concluding that Colt, had he not been stopped from collecting, would not have continued to pay the acceptances as they became payable.

I am of opinion that there is no sufficient ground for the appointment of a receiver.

As to the matter of account, the cause can proceed for the

purpose of ascertaining what profits have been made, with a view to the complainant's recovering his fourth part thereof.

The injunction, in this view, must be dissolved.

As to the attachment, no sufficient violation of the injunction has been shown.