McKinney, J.,
delivered the opinion of the Court.
The bill seeks to charge the defendant, Buchanan, as a partner with J. L. James & Son, for the hire of slaves for the year 1854, - amounting to near the sum ■ of $2000 00; not upon the ground that, in point of fact, a partnership existed, as between the parties themselves, but that as to third persons, the defendant is to be held liable as a partner, by construction of law, in opposition to the actual intention and agreement of the parties.
It appears that J. L. James & Son were iron-mas *723 ters and owners of the Phoenix Enrnace, situate in Montgomery county. In order to raise money to enable them to carry on their business, they had procured the defendant, Buchanan, who was a commission merchant, resident in Cincinnati, Ohio, to ■ accept drafts, for their accommodation, to the amount of $8000 00, prior to the 25th day of June, 1853. And .as indemnity to him, for this liability, they, on that day, executed to him a conveyance for a moiety' of said furnace, and lands appurtenant thereto, together with the fixtures, stock, &c. Shortly thereafter," to-wit: On the 22d day of' July, 1853, the parties entered into an , agreement in writing, the stipulations and provisions of which are stated somewhat inartificially, hut their true import is manifest. After reciting the above mentioned conveyance, and the real consideration thereof, ‘ namely, Buchanan’s acceptance s for James & Son, to the amount of $8000 00, the instrument proceeds' as follows: “ And it is understood, that the said Robert Buchanan shall receive, after the first day of' January, 1854, one-fourth of the net profits of said furnace', . in consideration of his said advances of eight thousand ' dollars; and his having agreed to furnish the necessary facilities, through his acceptances, to carry on said business, in such sums as may he necessary for the same.”-' The instrument then, in substance, provides, that all- the metal made at said furnace, after the 1st of January, 1854, shall be placed under the entire control of Buchanan; and that James & Son shall furnish him, monthly, with statements of the products' and expenses of said furnace; that they shall take an account of stock on the 1st of January, 1854, and that any debts that they may have *724 to provide for, after that date, shall he deducted from their share of the net profits of the concern; and that Buchanan is not to he liable for any debts of James & Son, contracted either before or after the 1st of January, 1854. James & Son are bound to renew their bills and drafts on Buchanan, as they fall due, and to pay all interest, exchange, and charges on the same. It is further stipulated, that said agreement should continue in force for two years, at the expiration of which time, Buchanan bound himself to reconvey to James & Son, the moiety of the furnace, &c., subject to his right to be indemnified, out of the same, for his advances, and “share of profits.” And in the conclusion of the instrument, is the following statement: “ The commissions of one-fourth the profits of the furnace, being paid to the said It. Buchanan, in consideration of his acceptances of said drafts, now out, and to be given hereafter.”
It is not assumed by the complainant’s counsel, that the parties, by this agreement, intended to make themselves partners. On the contrary, it is understood to be conceded in argument, and the question admits of no serious controversy, that, in fact, there was no intention to create a partnership, either as between the parties themselves, or as to third persons. But it is insisted that, by construction of law, the provision, securing to Buchanan “ one-fourth of the net profits,” constituted him a partner, as to creditors.
The authorities are at variance upon this subject; and, as we have no decision of our own upon the point, we are at liberty to adopt such rule as may seem to us most reasonable and just in itself.
*725 The rule of the common law, relied on by the complainant’s counsel in support of the bill is, that a specific interest in profits, as profits; or, in other words, a participation in the net profits of a business will, by construction of law, create a partnership between the parties, in favor of third persons.
Whether, on a careful review of the English authorities, the conclusion is warranted, that any such absolute, universal rule exists, is an -inquiry we need not stop to make. If it were admitted to be so, that rule has been essentially modified by the decisions of several of the American Courts, and upon principles of reason and natural justice, that cannot fail to command general assent and approval. Mr. Story, in his Treatise on Partnership, while admitting the doctrine of the common law, submits, whether, as ■ an original question, it would not have been more conformable to true principles, as well as to public policy, to have held, that no partnership should have been deemed to exist at all, even as to third persons, unless such were the intention of the parties, or unless they had so held themselves out to the public. Sec 86.
The American authorities referred to, do not admit the doctrine, that the mere fact of participation in the profits of a business, whether gross or net profits, is to be taken as conclusive of a partnership, even in favor of creditors, irrespective of the truth of the case.
They seem to proceed upon the more just and sensible view, that participation in the profits, affords merely a presumption, which is to prevail only in the absence of proof to the contrary; and that it is a question of fact, open to inquiry and proof, whether *726 the circumstances under -which the participation in the profits exists, clearly demonstrate that the profits are taken, not in the character of partner, hut in a totally different character, and merely as compensation for services or benefits rendered by the person by -whom they are received. In the latter case, while it is true, that, in a certain sense, the party has a community of interest in the profits, yet it is no less true, that he does not participate therein as an owner ór partner. He has no interest in the capital stock. He is not-' invested with the rights, powers, or duties of partner, nor is he liable for losses. His interest, whether it he a certain proportion of the profits, or a fixed sum to be paid out of the profits, is at most, only as tenant in common, possessed of an undivided portion of the profits. . The doctrine thus qualified and understood, makes the rule consistent with the great and leading principle of construction, that all agreements are to be expounded, and to have effect given to them, according to the manifest intention of the parties as apparent from the whole instrument or agreement, if not incompatible with established principles of law or policy, j What can he , more incongruous, in a case like' the j^esent, than to seize upon, and insulate' the wof$s “net profits,” from the context, and by taking thpm, in the legal sense of the phrase, give to the wholá agreement a meaning and effect diametrically opposed to the expressed intention and agreement of the parties; and thus create, for the purposes of a particular determination, a fictitious relation between the parties, which, upon the face of the whole instrument, is demonstrated not to . have existed ? This is contrary to the established principles and analo *727 gies of the law. In deeds, wills, and every description of written instruments or agreements, technical words, and phrases of defined legal import, are, in general, subject to be controlled by the clearly ' expressed intention of the parties in the context.
The supposed distinction between gross and net profits to which so much importance seems to be given in some of the cases, is scarcely worthy of grave consider•ation, in the determination of the' question, whether the profits were to be received by the party, in the character of partner, or in an entirely different character, The words, u net profits ” may be admitted to imply, in general, a participation in losses, as well as profits; and, of course, the share of net profits would be diminished in proportion to the amount of the losses. But still, this only, goes to the amount'of ‘compensation to be received by the agent, factor, &c.; it cannot establish the liability of such agent as a partner, where it is shown that no partnership exists.
Nor is the question, whether the stipulation for a share of the profits, will entitle the party to an account, of any more practical importance. It may be, in some cases, whether %e provision be for a certain proportion of the profits, or a fixed sum to be paid out of the profits, that an account would be necessary; but this, in reason, can have no influence upon the determination of the question of fact, which necessarily lies at "the foundation, whether or not a partnership was intended to be created' by the agreement of' the parties.
We lay it down, therefore, that in all such cases it is a question of fact, open to proof in the ordinary modes, whether or not a partnership exists by the in *728 tention and agreement of tbe parties. And if the fact be clearly shown not to be so, a mere stipulation, that a party shall reeeive a specific proportion .of the net or .gross profits of a business.’; or, an ascertained amount, payable out of the profits, as a compensation for services, benefits, .or advantages rendered to the business, will not mate such party liable as a partner, to third persons; provided he has not permitted the use of his name; or suffered himself to be held out as a partner to the public. We refer to 6 Metcalf's R.., 82; 10 do., 303; 22 Pick., 151; 12 Connect. R., 69; 20 Wend., 70; 4 Paige, 148, 160; Story on Part., sec. 86, 38,
The decree will be reversed, and the bill be dismissed.