## N. Y. SUPERIOR COURT.

JAMES W. AUTEN and others agt. EMILY G. ELLINGWOOD and others.

By agreement between the parties the good-will of a business may be owned in common, and not as partners.

So, also, may the business and property, which is of the substratum on which the good-will can alone rest.

*Special Term, May*, 1875.

SEDGWICK, *J.* — For the sake of an early decision the material propositions involved will be stated without elaboration. No proof except exhibits of the paper, the Shipping and Commercial List and New York Price Current, was given on the trial. The defendants moved upon the complaint alone that it be dismissed, and indeed all the facts appear that need to be known for an adjustment of the rights of the parties.

By the averments of the complaint the parties to this action were part owners, down to April 1, 1870, of the newspaper known as the Shipping and Commercial List and New York Price Current, including the proprietary interest and good will therein, as well as presses, engines, boilers, shafting, type and all appurtenances used in and about the printing and publication of said newspaper.

From the year 1850 to April 1, 1870, the plaintiffs and one Selah C. Cornish were the "sole conductors, editors and business managers of said newspaper, under the style of Auten & Bourne."

On April 1, 1870 a written agreement was made, headed

"agreement between the proprietors of the Shipping and Commercial List and Price Current and Messrs. Auten, Bourne & Cornish." Its most important covenant was: "It is hereby agreed by all the parties to these presents, that James W. Auten, John G. Auten, W. O. E. Bourne (who are the plaintiffs here) and Selah C. Cornish, now employed as conductors and editors of said paper, shall continue their services as hitherto in the editing and conducting of said paper for the term of five years at the following rate of compensation, viz.: sixty per cent of the net profits, which are to be ascertained as heretofore, to be paid as follows: To James W. Auten twenty per cent; to John G. Auten twenty per cent; to W. E. O. Bourne twenty per cent; and to Selah C. Cornish, in lieu of salary, an amount equivalent to fifteen per cent of the net profits, which, however, is to be considered a part of the expenses, and shall be included as such before the division of profits." The remaining forty per cent of the net profits were to be divided between the proprietors or part owners, viz., the parties plaintiff and defendant to this action. There were other appropriate provisions, all of which are important, but need not now be stated, as they appear in the pleadings. This agreement was executed by all the parties to this action or their representatives, and also by Mr. Cornish, who is not a party, and was not a part owner of the personal property owned by the others.

At the end of the five years no other written agreement was made between the parties as to the management and conducting of the publication of the newspaper, but by what seems to be a proper deduction from the admissions of the answer, the plaintiffs, without Mr. Cornish, by the assent of the defendants, continued to conduct the publication as before, excepting that instead of sixty per cent of compensation they were to receive a reasonable compensation.

A difference has arisen as to what is a reasonable compensation. The plaintiffs bring this action upon the theory that as a result of the dealing of the parties and the written agree-

Auten agt. Ellingwood.

ment, a partnership existed between them, and that a disso-
lution of it has occurred or should be adjudged, an accounting
taken, the firm property sold, &c. The main contest is as to
whether that property, which may be described in the words
of the complaint as " the newspaper called the Shipping and
Commercial List and New York Price Current, including the
proprietary interest and good-will therein, as well as presses,
engines, boilers, shafting, type and all appurtenances used in
and about the printing and publication of said newspaper " was
capital stock of the said partnership, alleged by the plaintiff
to exist; the defendants denying, also, that any agreement
between the parties resulted in any partnership.

It must be premised that whatever the nature of the prop-
erty, be it real property or chattel, personal or incorporeal
rights or interests, undivided interests in it may be owned by
several persons, jointly or in severalty, and such interests may
be the subject of agreement between the parties; and, as
between them, one kind of property may be treated as if it
were another, as, for instance, real estate may be treated as per-
sonal estate. *Modus et conventro vincunt legam.* There is
no legal impossibility, if such be the agreement between the
parties, of the good-will of a business being owned in com-
mon, and not as partners; and the same is true of the busi-
ness, which is of the substratum on which the good-will can
alone rest. It is more manifestly true of chattels used in the
business. The likelihood or probability or presumption that
such is not the character of the interests must yield to the
effect of testimony as to what is the fact.

In the present case the averments of the complaint form a
conclusive admission that, as a fact, the parties to this action
were owners in common of the property described in the
good-will, as well as the business, so called, and the chattels,
and were not partners as to it down to the making of the
written agreement. If we should suppose that there must
have been at a former time a business in which the parties
were partners, a liquidation of the partnership affairs as

between the parties does not imply that every thing may not be transferred to the several partners in undivided interests. Such property is directed to be sold by a court of equity only because, in absence of an agreement as to it, such course is generally decided to be the only equitable one.

It is further to be seen that the written agreement of its own proper force had for one of its objects the preservation of the character of the title to the property as owners in common. Whatever may be considered to be proper, inferences to the contrary drawn from subordinate parts of the paper, and, if there be a conflict, the intention is dominant, that the ownership should be in common and not as partners after the ending of the agreement.

This written agreement might, in its most important aspect, be, and indeed it is, one simply of employment of manager of the paper, and such employment of persons who are part owners would not determine the relations of the employers as between themselves. The persons employed might be all of them third parties. The inferences would be the same in both cases. But the fact that employers were part owners probably led to what are very decisive declarations ; that, as to the ownership of the property, it should be in common, which is in *pari materia* with that part of the agreement which results, as it seems clearly, in the establishment of a partnership between the parties to this action. So far as the plaintiffs were made managers, and entitled for their services as such to sixty per cent of the net profits, no partnership arose from that. As to that, they were like Mr. Cornish, who was to receive fifteen per cent. But there were forty per cent in which the owners were to share, of net profits. Necessarily they were to bear losses ratably. There was a capital partnership stock, either the property in controversy or the use of that property, as well as a provision for an advance of money for business purposes. At best for defendants, the plaintiffs and Mr. Cornish were the agents (as a part owner may be ship's husband) for the owners in the

Auten agt. Ellingwood.

business of which the owners were all to have a share of profits. All these things may not be necessary to a partner-ship, but they are all in this case to show that there was a partnership.

The only evidence (for it is a matter of evidence) to show that the interests of the parties in the property in question, as distinguished from a right to use it, was made partnership property, is the fact that the property itself was employed or used for the business of the partnership.

The mere fact of use, excepting of certain kinds of property, *e. g.* ship or land, while it may, standing by itself, be conclusive evidence of the property used being partnership capital stock, other facts may show the contrary. There is no need to examine whether to be a partner one must have an interest in partnership stock, because there was such in this case, and at least there was the use of the property. The case here is the same as if we were examining whether the property, if a single partner owned the whole, was partner-ship property. The rights of the parties are several, and each must have devoted his share to the partnership before it can be sold as partnership property.

At section 27, *Story on Partnership* says : "For if the whole capital stock embarked in an enterprise or adventure belongs to and is by agreement to remain the exclusive property of one of the parties, yet if there is a community of profit or of profit and loss, in the enterprise or adventure, between the parties, they will be partners in the profit or the profit and loss between themselves as well as to third parties, although not partners in the capital stock. The one does not necessarily include the other, and therefore we are carefully to distinguish between the cases. When there is a positive agreement between the parties on this point that will govern. Where there is no such agreement and no implication from the circumstances of the particular case leading to a different conclusion, there will be presumed to be a community of interest in the property as well as in the profit and loss."

Note 2 to this section unnecessarily supposes that *Chase agt. Barret* (4 *Paige*, 148), may be deemed by some as opposed to the law stated. In fact, it is not in any respect.

*Parsons on Partnership* (*at page* 55, *in note*), cites for a proposition to the same effect what chancellor WALWORTH said in *Champion* agt. *Bertwick* (18 *W.*, 182), viz. : "It is not necessary to constitute a partnership that there should be any property constituting the capital stock which shall be jointly owned by the partners. But the capital may consist in the use of property owned by the individuals separately" (*Penny* agt. *Beach*, 9 *Bosw.*, 315 ; *Coleman* agt. *Eyre*, 3 *N. Y. Sup. Ct. R.*, 481 ; 1 *American Law Cases*, 605, *in notes to Coles* agt. *Coles, and Dyer* agt. *Clark*). In the last it is said : "It seems to be settled that the mere fact that property held by the members of the firm or tenants in common, is used in and for the partnership in a mere agreement to use it for partnership purposes, is not, of itself, sufficient to make it partnership property."

In *Mumford* agt. *Nicoll* (20 *J.*, 626) it was agreed, or at least not denied, that the mere use of a ship by its part owners in a joint adventure would not, of itself, make the ship partnership property. Judge WOODWORTH said that "The question then is, admitting the owners of a vessel are to be regarded on the nice distinction of a tenancy in common, whether by the act of the parties the vessel was not made in respect to this concern as much a part and parcel of partnership property as the cargo ?" " One principal objection connected with that voyage was that both vessel and cargo should be sold and new investments made for the benefit of the concern." Chief justice SPENCER said, "I mean to say that part owners of a ship may, under the facts and circumstances of this case, become partners as regards the proceeds of the ship."

The principles must be the same in respect of what is personal property, *ab origine*, and of real estate, which in equity may be treated as turned into personal property. In respect

to real estate the rule is, that if tenants in common, or joint tenants, of real estate, not bought by partnership funds, use it for the business of a firm of which they are the partners, it is not deemed to be property of the firm, unless made so by express agreement or by their course of dealing with it for a long period (1 *Leading Cases in Eq.* [3 *Am. ed.*], 230 ; *Lake agt. Cradock* ; *Lake* agt. *Gibson, and the English note, which contains citations of many English cases on this point*). Indeed there may be cases where the purchase is by partnership funds, and the title be in the parties as joint tenants, and yet the intention to separate the real estate from partnership funds prevail as much as in the case of the investment of divided profits in personal property by a single partner.

If, then, it is true that the parties were owners in common of the property before the agreement was made, and the agreement specially preserves their title as such through the time that the business as to which they were partners lasted, and the use of such property owned in common by them for the business does not make it partnership property, under the circumstances of this case, the plaintiffs have no right to a judgment that the property be sold in the winding up of the partnership business.

The business referred to is that of the publication of the paper from April 1, 1870, to the present. In this business the plaintiffs, with Mr. Cornish, were the agents; the plaintiffs and defendants were the principals and partners. There will be (after excluding the property in existence at the beginning which was owned in common) no difficulty in ascertaining what was partnership property. In consideration of the position that by agreement the good-will was owned in common at the beginning, as well as the business; a good-will that under ordinary circumstances might be deemed attached to the operations of the partnership through the five years under the written agreement and since, must be considered as accessory to, and an accretion of, the good-will

Auten agt. Ellingwood.

and business that existed in the beginning, the plaintiffs will be entitled to reasonable compensation for their services since April 1, 1875.

The plaintiffs are accordingly entitled to judgment for a dissolution, and that an accounting, &c., be had before a referee ; the judgment to contain a proper adjudication that the property in existence on April 1, 1870, described in the complaint, is not partnership property.