LANE and HUDDLESTON *vs.* BAILEY and SOUTHARD.

In an action to recover for a conversion of promissory notes left with the defendants by the plaintiffs' assignors, as collateral security, the defendants offered to prove that it was the practice of their firm, on extending time, to demand collaterals. *Held* that the evidence was not admissible; that no practice of the firm in relation to their general transactions would affect the testimony relative to this particular transaction.

Where securities are pledged by a debtor, to his creditor, as collateral security for a specific debt, the creditor, in an action against him for the conversion of the securities, can not set off his general demand against the plaintiff.

APPEAL from a judgment at the circuit in favor of the plaintiffs, for $2703.80, and from an order denying a new trial on the judge's minutes. The plaintiffs are assignees of the firm of Lane & Guild, under a general assignment made May 8, 1861, for the benefit of creditors. This action was brought to recover the sum of $2300, with interest, for an alleged conversion of certain notes left with the defendants by Lane & Guild, the assignors of the plaintiffs, as collateral security for the payment of moneys due the defendants. The plaintiffs claimed that the notes were left as security for a specific debt of $5000 for borrowed money. The defendants admitted they were left as security for that debt, but claimed further that they were also left to secure the entire indebtedness of Lane & Guild to them, amounting at the time, including said $5000, to upwards of $10,000. In January, 1861, Lane & Guild were indebted to the de-

fendants in the sum of $5521 for goods sold and delivered, and at that time they, Lane & Guild, made an arrangement with the defendants whereby they, the defendants, extended such indebtedness, and received therefor Lane & Guild's notes, indorsed by Robert Lane, and falling due, one in July and one in August, 1861, and at the same time they, the defendants, loaned Lane & Guild $5000 in money, upon notes similarly indorsed. Upon this loan of $5000 Lane & Guild gave to the defendants, in addition to Robert Lane's indorsement, five certain promissory notes, from among their bills receivable, each being made by a certain firm, Wilson & Co., and each for the sum of $1000. Subsequently the defendants sold and assigned one half of this $5000 claim (for the borrowed money) to one Abram Van Wyck, and collected three of the $1000 collateral notes, being more than sufficient to pay the balance due them on the borrowed money account. Van Wyck then assigned to the plaintiffs any interest which he might have in the two collateral notes remaining in the defendants' hands, and the plaintiffs demanded of the defendants the two remaining notes, and also the balance of the amount collected by them, over and above their claim. The defendants refused to surrender either the notes, or such balance, and thereupon, for the conversion thereof, this action was brought. Upon the trial the defendants claimed that these five Wilson & Co. notes were given as collateral upon Lane & Guild's entire indebtedness, and not merely upon the $5000 borrowed money. This was the single issue *of fact,* and the *jury* found thereon for the plaintiffs. The defendants also claimed that Lane & Guild's indebtedness to them should be allowed as a set off to any amount which otherwise the plaintiffs might be entitled to recover. This was the single issue of *law,* and the *court* found thereon for the plaintiffs.

*Charles Crary,* for the appellants. I. The defendants offered to prove that it was the practice of their firm, on

Lane *v.* Bailey.

extending time, to demand and receive collaterals; and that this practice was well known to the witness Guild, and to his firm of Lane & Guild. The court refused to admit the evidence, and the defendants excepted. This was error. 1. This evidence was pertinent as showing the contract between the parties; especially when the exact character of the evidence of the plaintiffs' only witness is taken into consideration; for that evidence, as we have seen, was of a doubtful and equivocal character. And the plaintiffs' theory, that the collaterals were given only to secure the borrowed money, was an implication or presumption arising from the evidence, rather than a fact established by positive testimony. In such cases, the evidence is proper as showing the contract between the parties. (2 *Greenl. Ev.* § 271, *and cases.* 2 *Cowen & Hill's Notes,* 1409, 2d ed. *and cases.*) 2. But it was pertinent, also, as affecting the credibility of the witness' testimony. If that was the defendants' custom, and the witness well knew it, why did he expect any thing different? and what explanation can he give for this variance in the defendants' practice?

II. But even if the collaterals were given solely as a security for the borrowed money, yet the plaintiffs have no right to them, or any part of them, until all the defendants' claims are paid. The plaintiffs are assignees of Lane & Guild. The collaterals were received by the defendants several months before the assignment, and at a time when the assignors were indebted to them in more than double their amount; and which indebtedness still continues to an amount, at least more than sufficient to exhaust all the collaterals. The assignors have become insolvent, as has also their indorser, Robert Lane. The defendants, therefore, have no way whereby to obtain payment of their claims, except through these collaterals. If the plaintiffs are allowed to succeed, they will receive the amount as trustees under the assignment, and will distribute it to other creditors, who knew nothing of the collaterals, and whose equity is inferior to that of the defend-

ants. And thus the defendants—who loaned their money to Lane & Guild at a time when they were solvent, extending their credit at the same time upon an additional indebtedness of equal amount, receiving notes for the entire indebtedness, indorsed by Robert Lane, none of which would mature in several months, or did in fact, mature until some time after both makers and indorser had become insolvent—now find themselves not only deceived and cheated in the indorser, but actually prosecuted in an action in which the indorser himself is one of the plaintiffs, and in which a recovery has been had against them, taking from them *the only security* which they in fact received. Under such circumstances there can not be any doubt what the court will do. They will allow the defendants to set off their claims against the moneys received upon the collaterals. This the court have ample power to do, as can be abundantly shown by the authorities. Thus, a court of equity will allow a set-off, where a court of law will not, where from the nature of the claim, or the situation of the parties, justice can not be obtained by a cross action. And the insolvency of one of the parties is sufficient ground for the exercise of this equitable jurisdiction. (2 *Paige,* 581. 10 *id.* 369. 2 *Barb. S. C. R.* 258.) This equitable jurisdiction has been frequently exercised in cases of insolvency, where the debt of one party is due, and the other is not, (2 *Paige,* 581;) and also in a variety of other cases. (2 *Paige, and cases cited.* 10 *id.* 369. 2 *Barb. S. C. R.* 258.) Where there are mutual demands between the parties which can not be set off under the statute, but which a court of equity may compensate or apply in satisfaction of each other without interfering with the equitable rights of any person, the fact that one of the parties is insolvent has frequently been held a sufficient ground for the exercise of the equitable jurisdiction of the Court of Chancery. (2 *Paige,* 582, *supra, citing* 1 *P. Williams,* 325. 4 *Conn. R.* 302; *and see* 10 *Paige,* 376, *and* 2 *Barb.* 258, *supra.*) And see, also, *Exparte Deeze,* (1 *Atkyns R.* 228,)

which is a case illustrating this equitable doctrine of set-off, and is very similar in its. facts to the case now before the court. There, Nichols, a merchant, borrowed of the petitioner the sum of £500, for which he gave his note; afterwards he sent the petitioner, who was a packer, six bales of cloth to pack and press; some time after, Nichols paid off a part of the £500, taking up the old note, and giving a new note for the remainder. Before the new note was paid, and before the six bales were taken out of the petitioner's custody, Nichols became a bankrupt, and the question was, whether the petitioner could retain the six bales until his whole debt was paid. The court held that he could; and that his assignees had no right to take the goods from the petitioner without satisfying his whole debt.

The doctrine of that case has been recognized as sound in several cases since reported. (*See* 4 *Term R.* 211 ; 5 *Taunton,* 56 ; 3 *John. Ch. R.* 358.) If it is said that the cases referred to arose under the statute authorizing demands to be set off in cases of mutual credit, where one of the parties is insolvent, it is answered, that the doctrine of those cases is the doctrine of courts of equity, and the cases show how far those courts will go in allowing set-offs in cases of mutual trust. (*See* 2 *Paige,* 581; 10 *id.* 369 ; 2 *Barb. S. C. R.* 258, *supra.*) The assignees in this case took the claims subject to any equitable right of set-off existing between the assignors and the defendants. (10 *Paige,* 369.) The plaintiffs stand precisely in the position of their assignors. (*Id.*) " And that which would be unjust and unconscientious if done by the insolvent himself, certainly can not be equitable and right when done by the officers of a court of equity who have succeeded to the rights and duties of the insolvent." (6 *id.* 227, 228.)

III. If it is claimed that the collaterals passed by assignment from the defendants to Van Wyck, and from him to the plaintiffs, it is answered : 1st. There is no evidence of any transfer by the defendants to Van Wyck; 2d. All the

evidence on the subject was that given by the defendants themselves, and that disproves it; and 3d. The plaintiff's sue assignees of Lane & Guild, and not as assignees of Van Wyck.

*S. T. Freeman,* for the respondents. I. The defendants were merely the pledgees of the five collateral notes, and the right of property in such notes did not pass to them, but remained in Lane & Guild, and under their assignment passed to the plaintiffs, subject to the defendants' lien. They, the defendants, were in the character of trustees for the pledgors, "first, to pay to the debt; and, second, to pay over the surplus." (*Wheeler* v. *Newbould,* 16 *N. Y. Rep.* 392, 398.) As soon, therefore, as the debt, upon which these collaterals were given, was paid, the property and the right of possession in the remaining notes and the residue of the proceeds belonged to the plaintiffs as assignees of Lane & Guild. (*Garlick* v. *James,* 12 *John.* 146. *Brownell* v. *Hawkins,* 4 *Barb.* 491. *Hawks* v. *Hinchcliff,* 17 *id.* 492. *Wheeler* v. *Newbould,* 16 *N. Y. Rep.* 392.)

II. The defendants should not have been allowed any part of their debt against Lane & Guild as a set-off, because, 1. They make no such claim in their answer. 2. Lane & Guild's indebtedness to the defendants was not due when the assignment to the plaintiffs was made, and therefore such indebtedness could not be set off in the action brought by the assignees. (*Hicks* v. *McGrorty,* 2 *Duer,* 295. *Wells* v. *Stewart,* 3 *Barb.* 40. *Myers* v. *Davis,* 22 *N. Y. Rep.* 489.) 3. This action is brought to recover the *value* of two certain notes. *Prima facie,* it is true, the face of these notes determined their value, but this value the defendants deny, and such value had to be found by the jury. The defendants had the privilege of showing that these notes were actually worth but fifty cents on the dollar, and the plaintiffs' recovery would have been that much reduced. The amount to be recovered by the plaintiffs was, therefore, unliquidated, and

a set-off was not allowable. (*Gordon* v. *Bowne*, 2 *John*. 150. *Burgess* v. *Tucker*, 5 *id*. 105. *Duncan* v. *Lyon*, 3 *John. Ch.* 351.) 4. In this case the cause of action in the plaintiffs arose after the assignment ·to them, and therefore a demand against their assignors could not be set off against them, the assignees. (*Merritt* v. *Seaman*, 2 *Seld*. 168. *Mercein* v. *Smith*, 2 *Hill*, 210.) 5. This action is for a tort, and, therefore, no set-off can be allowed. (*Gottler* v. *Babcock*, 7 *Abb*. 392 *n*. *Pattison* v. *Richards*, 22 *Barb*. ·143. *Donohue* v. *Henry*, 4 *E. D. Smith*, 162.) In the last case, which was an action for the conversion of personal property, Ingraham, First J. says : "In an action of this kind no set-off is admissible." 6. To allow the defendants' debt, against Lane & Guild, as a set-off, would be in direct violation of the parties' agreement, as found · by the jury ; would be suffering the defendants to do indirectly what they can not do directly, viz : Apply the collaterals to their entire indebtedness ; and would be giving to the defendants an undue advantage over the other creditors of Lane & Guild.

III. The defendants' questions and offers, in regard to proving their own practices and customs, and custom generally, in reference to collaterals, were properly overruled and excluded ; because, 1. They might as well offer to prove in an action on contract, that it was not their usual practice to pay their debts, and thereupon claim judgment in their favor. 2. Custom or usage is never allowed to be proved to contradict the fair legal import of an express contract. (*Merchants' Bank* v. *Woodruff*, 6 *Hill*, 174. *Dykers* v. *Allen*, 7 *id*. 501. *Wheeler* v. *Newbould*, 16 *N. Y. Rep*. 401.) 3. Conceding the defendants' practice and the general usage and custom to be as claimed by the defendants, yet they never so practiced, nor acted in accordance with any such custom, in their dealings with Lane & Guild, for Mr. Guild says — and neither the defendants, nor their clerk, pretended to contradict it—" that he *had* given the defendants collaterals on borrowed money, before," and that " the defendants had *never*

---
Lane *v.* Bailey.
---

required collaterals of *him* on extended paper, *but only on borrowed money.*"

*By the Court,* CLERKE, J.   I. As to the question of fact, whether the promissory notes were pledged merely to secure the borrowed money, ($5000,) or whether they were pledged to secure the whole indebtedness due from the assignors of the plaintiffs to the defendants, is a question of fact submitted to the jury on conflicting evidence, with which it is not proper that we should interfere.

II. The offer of the defendants to prove that it was the practice of their firm, on extending time, to demand collaterals, was not admissible.   The question as to the extent of the pledge depended entirely on the agreement ; and this was ascertainable from what was said or done by the parties, at the time, in relation to this particular transaction.   No practice of the firm, in relation to their general transactions, could have affected the testimony relative to this particular transaction, one way or the other.

III. Had the defendants a right to set off their general demand against the assignors of the plaintiffs, against this demand of the plaintiffs ?   Undoubtedly, where there are mutual demands between parties, which can not be set off under the statute, but which a court of equity may compensate or apply in satisfaction of each other, the fact that one of the parties is insolvent, has, frequently, been held a sufficient ground for the exercise of the equitable jurisdiction of courts of equity.   But this has been done only when it did not interfere with the equitable rights of other creditors, or with other cherished principles of those courts.   Equality is one of these principles ; and in cases of insolvency, equity, when not prevented by other rules of law or equity, which are too stringent to be evaded, will countenance and aid an equal distribution of the assets ; and will not, therefore, countenance a set-off, which will give one creditor of an insolvent, or a bankrupt, an advantage over others equally vigilant.

The case in *Atkyns,* cited by the defendants' counsel, (*Exparte Deeze,* 1 *Atk. R.* 223,) has apparently, from the text of the report, some analogy to this case. It was there decided by the lord chancellor, (Hardwicke,) that a packer may not only retain goods until he is paid the price of packing ; but if he has another debt due to him from the same person, the goods shall not be taken from him until he has been paid the whole, notwithstanding the debtor has become a bankrupt. But my edition of Atkyns, (London edition, 1794,) contains a note of the reporter, appended to the case, which the Dublin edition does not contain, and which, I am informed, was the edition consulted by the counsel of the defendants in this case. According to the note, the case was determined upon evidence that it was usual for packers to lend money to clothiers, and the cloths to be a pledge, not only for the work done, in packing, but for the loan of money; likewise ; according to which usage the packer was in the nature of a *factor,* and as such, entitled to a lien upon the goods, not only for incidental charges, but as an item of *mutual account* for the general balance due to him. This is clearly shown by the lord chancellor himself, in the same volume, a few pages further, in *Exparte Ockenden,* (1 *Atk. Rep.* 234.) There he decided that where goods are delivered to a tradesman or manufacturer, for a particular purpose, as corn to a miller, to be ground, or cloth to be dyed by a dyer, no right of set-off exists. Referring to *Exparte Deeze,* he says : "There was evidence before me that it is usual for packers to lend money to clothiers, and the cloths to be a pledge, not only for the work done in packing, but for the loan of money, likewise." He adds : "I do not know that a court of equity have gone further than courts of law, in cases of set off."

In *Murray* v. *Riggs,* (15 *John.* 591,) Thompson, Ch. J. in delivering the opinion of the court, cited *Exparte Deeze,* as authority for the unqualified right of equitable set off, in the same manner as the counsel of the defendants in this action, without referring to the note of the reporter, or to the

subsequent decision of the lord chancellor, in *Exparte Ockenden.* Kent, chancellor, also, in *Duncan* v. *Lyon,* (3 *John. Ch.* 359,) referred to *Exparte Deeze,* without seeming to be aware of the explanation in the reporter's note, or of the subsequent decision in *Exparte Ockenden;* although he admits that a court of equity follows the same general rules as a court of law, in respect to set off.

*Myers* v. *Davis,* (22 *N. Y. Rep.* 489,) is very pertinent to the case before us, and, without regarding any other principle than the one there referred to, is conclusive. It was there held that until a demand becomes mature, a set-off may be defeated by the assignment of the claim of the opposite party, though the latter may be insolvent, and his demand may not have become payable when assigned. In this case, the indebtedness of the assignors of the plaintiffs to the defendants did not mature, when the assignment to the plaintiffs was made.

There are other reasons why no set off could be allowed in this case. But these certainly are quite sufficient.

The judgment should be affirmed with costs.

[New York General Term, January 2, 1866. *Geo. G. Barnard, Clerke* and *Ingraham,* Justices.]