ALEXANDER HODGES vs. THE RICHMOND MANUFACTURING
COMPANY.

In an action by H. against R. to recover damages of R. for refusing to fulfil an alleged
verbal contract to print and sell at cost the print cloths of H.'s mill until he made fifteen
thousand dollars, that contract to take the place of one H. had previously made to sell R.
the production of his mill for four months at twenty cents per yard, from January 1st to
May 1st, 1866 ; held, that evidence of the value of gray goods during the four months
from January 1st to May 1st, 1866, offered to show the probability of R. making such a
contract, was inadmissible ; and held, further, that evidence of the custom of R. to make
contracts of like character to the one alleged to have been made with R., offered for the
same purpose, was also inadmissible.

THIS was an action to recover $50,000 damages, for breach of
a contract. At the trial of the case, at the October Term, 1870,
of the Supreme Court for this county, before the chief justice
and a jury, a verdict was rendered in favor of the defendants,
whereupon the plaintiff moved for a new trial on the ground of
alleged error on the part of the judge presiding at the trial, in
the exclusion of certain testimony offered by the plaintiff. The
grounds of the motion are fully set out in the opinion of the
court.

Bradley, for plaintiff.

Payne, Eames & S. A. Cooke, Jr., for defendants.

DURFEE, J. This was an action to recover damages of the de-
fendant corporation for refusing to fulfil an alleged verbal con-
tract, the making of which was denied by the defendant. The
plaintiff testified that the contract was made with him on behalf
of the defendant corporation, in December, 1868, by its then
President, George M. Richmond, who died before the commence-
ment of the action, and that, at the time, the plaintiff made a
memorandum of the contract which he read over to the said
George M. Richmond, who declared it to be correct. The mem-
orandum was as follows : —

" Memo of a contract entered into with G. M. Richmond, Presi-
dent of the Richmond Mfg Co to print and sell at cost the pro-
duction of print cloths of my mill in Taunton, Mass., with the
understanding I am to purchase goods of other makes of like qual-
ity they paying for the same at the market value sufficient to
supply one printing machine about (1200) pieces per week.

" This agreement to continue two years or longer if necessary until I have made a net profit of ($50,000) this contract is to take the place of the one I had previously made to sell them production of my mill for four months at twenty cents per yard. Commencing January 1st, ending May 1st, 1866."

The plaintiff offered in support of his claim and of the probability that the defendant corporation, or the said Geo. M. Richmond, acting in its behalf, would make such a contract, the price current published by Thomas J. Abbott, a cotton broker in the city of Providence, to show the value of gray goods during the four months beginning January 1, 1866, and ending May 1, 1866, which the court at first admitted *de bene esse*, but subsequently, in the course of the trial, ruled out. To this latter ruling the plaintiff excepted, and now asks for a new trial upon the ground that he was entitled to the benefit of the testimony.

The plaintiff cites, in support of the admissibility of the testimony, the cases of *Bradbury* v. *Dwight*, 3 Met. 31, and *Parker* v. *Coburn*, 10 Allen, 82. In *Bradbury* v. *Dwight* the question was, whether, by the terms of a lost contract in writing, the defendant sold the plaintiff all the wood on a certain lot for $300, as claimed by the defendant, or sold him $300 worth of 'the wood on the lot for $1.25 per cord, as claimed by the plaintiff, and the court held that testimony that the wood was worth more than $1.25 per cord was admissible for the purpose of showing a probability that the agreement was for the sale of all the wood for $300, there being at $1.25 per cord less than $300 worth on the lot. In *Parker* v. *Coburn*, the controversy being as to the price agreed to be paid for land, the court admitted testimony tending to show that the value of the land was less than the sum claimed by the plaintiff as the agreed price. The cases simply show that where there is a controversy in regard to the price of a thing sold, testimony is admissible to prove its value at the time of the sale. The cases do not decide that, where the making of the alleged contract of sale is in dispute, the then value of the thing alleged to be sold can be proved to show the making, and still less that the subsequent value thereof is provable for that purpose. If in December, 1865, the parties to this action were in negotiation with a view to a contract of the kind set up by the plaintiff, they were doubtless influenced by the prices of cotton and cotton cloths

then current, but they would not be influenced by the prices prevailing in the four months ensuing, for the reason that they could not know the prices which would then prevail. The plaintiff contends that testimony in regard to such subsequent prices is admissible because the parties contemplated the prospective value, and are presumed to estimate it correctly. We are not aware of any rule of law authorizing such a presumption, and it is notorious that, in point of fact, the anticipations of the shrewdest business men are often disastrously wide of the mark. We suppose that the late George M. Richmond, in December, 1865, could have anticipated, with more or less accuracy, the value of cotton cloths during the ensuing four months; but he would have formed his anticipations upon facts then existing or assumed by him as existing, and therefore we think the utmost the plaintiff could have required was, that the jury should, as far as possible, be put in his place by the proof of such 'facts.

The second ground for a new trial is substantially the same as the first, and for the same reasons must be overruled.

The third ground is a third alleged erroneous ruling upon a question of evidence. It appeared on the trial that George M. Richmond had been for many years engaged in the business of printing print cloths; that he had taken his two sons into that business with him; and that after July, 1865, having obtained an act of incorporation, they had carried on the business as a corporation under the name of the Richmond Manufacturing Company, the said George holding 498 shares of the stock, and the two sons one each. The defendant corporation called as a witness one Stillwell, who had been clerk of the defendant corporation, and of said George M. Richmond, and George M. Richmond & Sons, and asked him whether to his knowledge the Richmond Manufacturing Company ever made a contract for the product of a mill for a definite time, at a definite price, unless the contract was in writing. The witness replied in the negative, and said it was the usual custom to have a bill of sale as a contract. In reply to the plaintiff, on cross-examination, the same witness stated the contracts made by George M. Richmond with plaintiff and others in regard to printing, for some five or six years previous to December, 1865, were in writing, whereupon he was asked to exhibit these contracts said to be in writing. The defendant then ob-

jected to any inquiry for a contract prior to July, 1865, the date of the organization of the corporation, and the court sustained the objection. To this ruling the plaintiff excepted, and now claims a new trial upon the ground that it was erroneous.

The plaintiff was allowed to cross-examine the witness upon the subject upon which he had been examined in chief, — namely, the practice of the defendant corporation in regard to having its contracts in writing, — but he claimed the right also to inquire into the practice of George M. Richmond and George M. Richmond & Sons, inasmuch as George M. Richmond was, for all practical purposes, the corporation. The claim is not so much that the plaintiff was not permitted to cross-examine the witness to the extent to which he had been examined in chief, as that he was entitled and was not allowed to show by testimony elicited in his own behalf as to the practice of George M. Richmond, that there was no improbability that the contract set up by the plaintiff was made because it was not in writing. The objection taken to the testimony was, that the corporation was a legal entity distinct from George M. Richmond, and that therefore no inference against it could be drawn from his practice. We think the objection, under the peculiar circumstances of the case, savors more of form than of substance. But the question arises whether such testimony is not open to objection for irrelevancy. Upon this question the plaintiff has cited several cases, but we do not find in either of the cases cited that it has ever been held that a practice or usage of one party to a suit may be given in evidence to prove or disprove a fact in dispute between them, which is not in any way dependent upon such practice or usage. The case which is nearest to being a case in point, among those cited, is the case of *Naylor* v. *Semmes*, 4 Gill & J. 273; but in that case the practice proved was not a practice of one of the parties to the suit, but a practice agreed to and participated in by both of them. On the other hand there are cases to show the irrelevancy of the testimony. The general rule in civil cases is, that the character of a party cannot be proved unless his character is involved. 1 Greenl. Ev. § 54. In an action against the owner of a horse and cart for the negligence of his servant, it was held that evidence of the general reputation of the servant as a careless driver, or that he had been careless on previous occasions, was inadmissible.

*Jacobs* v. *Duke*, 1 E. D. Smith, 271. And see *Commonwealth* v. *Worcester*, 3 Pick. 462. So upon an issue whether the punishment of a pupil by his master was excessive, evidence that the ordinary management of the latter, as a teacher, was mild and moderate, was held to be inadmissible. *Lander* v. *Seaver*, 32 Vt. 114. So it has been held that the fact that the defendant had paid A.'s debt to B. could not be given in evidence, in support of the claim that he had promised to pay A.'s debt to the plaintiff. *Phelps* v. *Conant*, 30 Vt. 277. And see *Hilton* v. *Scarborough*, 5 Gray, 422. So where the question was whether a contract of a particular character had been made, it was held that evidence was inadmissible to show that it was not the custom in the vicinity to make contracts of that kind. *Goodfellow* v. *Meegan*, 32 Misso. 280.

In *Lane* v. *Bailey*, 47 Barb. 395, the action was trover for the conversion of five notes alleged to have been left with the defendants as security for $5,000 borrowed money. The defendants claimed that the borrowers were at the time largely indebted to them on a general account, upon which they gave further credit, the five notes to be held as collaterals for such account as well as for the borrowed money; and in support of this claim, offered to prove that it was the practice of the firm, on extending time, to demand and receive collaterals, and that the practice was known to the pledgors. Upon the question whether the testimony ought to have been admitted, the court said: " The question as to the extent of the pledge depended entirely on the agreement, and this was ascertainable from what was said and done by the parties at the time in relation to this particular transaction. No practice of the firm, in relation to these general transactions, could have affected the testimony relative to this particular transaction one way or the other."

In *Hollinghead* v. *Head*, 5 C. B. N. S. 388, an action was brought to recover for a quantity of a certain article called "Rival Guano," at a given price per ton. The defence was that the article was worthless, and that one of the terms of the contract was that the purchaser was not to pay for it unless it turned out to be equal to Peruvian guano. To show this, the defendant proposed to call witnesses to prove that the plaintiff had made contracts with other persons for the sale of his guano upon the

terms suggested. The judge ruled that the testimony was inadmissible for irrelevancy, and the ruling was sustained by the full bench in the Court of Common Pleas. Willes, J., said: " I am of opinion that the evidence was properly disallowed as not being relevant to the issue. It is not easy in all cases to draw the line and to define with accuracy where probability ceases and speculation begins, but we are bound to lay down the rule to the best of our ability." And he added: " If such evidence were held admissible, it would be difficult to say that the defendant might not, in any case where the question was whether or not there had been a sale of goods on credit, call witnesses to prove that the plaintiff had dealt with other persons on credit; or, in an action for an assault, that the plaintiff might not give evidence of former assaults committed by the defendant upon other persons, or upon persons of a particular class, for the purpose of showing that he was a quarrelsome individual, and therefore that it was highly probable that a particular charge of assault was well founded. The extent to which this sort of thing might be carried is inconceivable."

We think these cases show that the testimony was irrelevant, and that, if offered as affirmative evidence, it should have been rejected. But it is to be considered as testimony offered in rebuttal of an inference unfavorable to the plaintiff's claim, which might be drawn from the defendant's testimony, that it was the practice of the corporation to have its contracts, of a somewhat similar class to that set up by the plaintiff, committed to writing. The plaintiff was allowed to cross-examine the witness fully as to the practice of the corporation, and it appears that he did elicit the fact that there were contracts made by the corporation or its predecessors which were not in writing. He wished to pursue the same line of inquiry in regard to George M. Richmond and George M. Richmond & Sons, and to show by way of rebuttal, that they had made such contracts without having them reduced to writing, when he was interrupted by an objection which was sustained; and therefore the question now is, whether the plaintiff shall have a new trial because he was not permitted to rebut a possible inference from certain irrelevant testimony, introduced without objection by the defendant, by irrelevant testimony of his own, which was objected to, though

not upon the ground of its irrelevancy. We are not prepared to decide this question in favor of the plaintiffs. The proper way of dealing with irrelevant testimony, when so introduced, is to have it stricken out, or to have the jury instructed to disregard it, and though possibly an oversight in this respect might be a ground for a new trial, in the discretion of the court, if the ends of justice required it, we are not satisfied that there is sufficient reason for such an exercise of our discretion in this case.

*Motion for new trial denied.*